**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**


LAURA D. CATES-WYLES                                        PLAINTIFF


v.                                4:06CV01514 SWW/JTR


MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,[1]                                 DEFENDANT



**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

This recommended disposition has been submitted to United States District Judge Susan

Webber Wright. The parties may file specific objections to these findings and recommendations and

must provide the factual or legal basis for each objection. The objections must be filed with the

Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy

must be served on the opposing party. The District Judge, even in the absence of objections, may

reject these proposed findings and recommendations in whole or in part.

**DISPOSITION**

Plaintiff, Laura D. Cates-Wyles, has appealed the final decision of the Commissioner of the

Social Security Administration denying her claim for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). Both parties have submitted Appeal Briefs (docket entries

#11 and #12), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is

supported by substantial evidence on the record as a whole and whether it is based on legal error.

*Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007.
He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed.R.Civ.P. 25(d)(1).

evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[2] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff alleges that she is disabled based on Epstein-Barr syndrome,[3] fibromyalgia, chronic fatigue syndrome, severe allergies, asthmatic bronchitis, chronic bronchitis, chronic sinusitis, and arthritis. (Tr. 117.)   After conducting an administrative hearing on November 27, 2002, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through December 29, 2003, the date of his decision. (Tr. 336-337.) On August 25, 2006, the Appeals Council declined to assume jurisdiction, making the ALJ's decision the final decision of the Commissioner. (Tr. 308-311.) Plaintiff then filed her Complaint initiating this appeal. (Docket entry #2.)

Plaintiff was 43 years old at the time of the November 27, 2002 administrative hearing.[4] (Tr. 414.) She is a high school graduate, with one year of college. (Tr. 134, 414.) She has past relevant work as a housekeeper, laboratory clerk, mail room clerk, and airlines operation clerk. (Tr. 102-115, 449.)

---

[2]*Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

[3]A herpes virus that causes infectious mononucleosis. PDR MEDICAL DICTIONARY 1966 (2d ed. 2000). Most cases resolve uneventfully, but complications may be dramatic. THE MERCK MANUAL 1611 (18th ed. 2006).

[4]The first administrative hearing in this case occurred on January 22, 1998 (Tr. 35-73), and resulted in a decision adverse to Plaintiff. (Tr. 14-26.) Plaintiff appealed to this Court, which reversed and remanded. (Tr. 365-369.) *Cates v. Barnhart*, 4:00CV00578 SWW (Judgment, Jan. 30, 2002). Both the January 22, 1998, and November 27, 2002 administrative hearings were held before the same ALJ.

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b)(2003). If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.*

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).[5] If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(g). If so, benefits are denied; if not, benefits are awarded. *Id.*

In his December 23, 2003 decision, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset date, October 4, 1996 (Tr. 336); (2) had a long history of "severe" musculoskeletal problems, sinusitis, lung problems, mental problems, and pain (*id.*); (3) did not have an impairment or combination of impairments that met or equaled a Listing

---

[5]If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. *Id.*, § 404.1520(e). This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

(*id.*); (4) was not entirely credible;[6] (5) retained the RFC for a narrowed range of light work (*id.*); and (6) could return to her past relevant work as a laboratory clerk, mail room clerk, or clerk typist, but not to her past relevant work as an airline operations clerk or housekeeper. *Id.* Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

In Plaintiff's Appeal Brief, she argues that the ALJ erred: (1) in improperly relying on testimony from a non-treating, non-examining physician; (2) in relying too heavily on the opinion of a consulting rheumatologist; (3) in not giving proper weight to the opinion of a consulting psychologist; (4) in asking the vocational expert an improper hypothetical question; and (5) in failing to fully consider the opinion of one of her treating physicians regarding her medically documented allergy to dust associated with using and handling paper products, as a limitation which would prevent her from returning to her past employment as a laboratory clerk, mail room clerk, or clerk typist. The Court will address each of these arguments separately.

First, Plaintiff contends that the ALJ improperly relied on a non-treating, non-examining physician, James W. Schmidley, M.D., a board certified neurologist (Tr. 394-395). (*Pltf.'s App. Br.* at 13-14, 19-20.) Importantly, Dr. Schmidley was *not* simply a "reviewing physician." The ALJ called Dr. Schmidley as a medical expert (Tr. 393, 394), and he testified at some length during the administrative hearing. (Tr. 394-413.) An ALJ's use of such an expert witness was approved in *Janka v. Secretary of Health, Ed. and Welfare*, 589 F.2d 365, 368 n.4 (8th Cir. 1978):

> The use in social security disability determinations of a medical advisor, i.e., "an expert who does not examine the claimant but who hears and reviews the medical evidence and who may offer an opinion," was expressly approved in *Richardson v. Perales*, 402 U.S. 389, 396, 408, 91 S.Ct. 1420, 1425, 28 L.Ed.2d 1842 (1971). The opinion of such an advisor, even if different from that of an examining physician, may constitute substantial evidence to support a finding of nondisability. *Gaultney v. Weinberger*, 505 F.2d 943, 945 (5th Cir. 1974).

The role of such a medical expert is to aid the ALJ in evaluating the medical evidence. *England v. Astrue*, 490 F.3d 1017, 1021 (8th Cir. 2007); *see Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661,

---

[6]The ALJ found that Plaintiff's testimony was inconsistent with some of the objective medical evidence and other evidence in the record. (*Id.*)

666 (8th Cir. 2003). Because the use of a physician as an expert witness is permissible, especially in cases involving complex medical questions, the Court concludes that the ALJ did not err in calling Dr. Schmidley as a witness or in relying on his testimony.

Second, Plaintiff argues that the ALJ erred in placing undue weight on the opinion of Donald G. Leonard, M.D., a specialist in rheumatology. (*Pltf.'s App. Br.* at 14-18.) Plaintiff was examined by Dr. Leonard on March 9, 1998. (Tr. 268-269.) After getting the results of blood studies, Dr. Leonard diagnosed fibromyalgia: "It is clear cut that this is the diagnosis and I doubt the patient will have any major problem in the future, other than some degree of psychologic, and probably could hold down gainful employment as commensurate with education." (Tr. 270.) He also completed a Medical Assessment Of Ability To Do Work-Related Activities (Physical), in which he found that Plaintiff had no physical limitations. (Tr. 271-272.)

According to Plaintiff, the ALJ should have relied less on Dr. Leonard's opinion and more on the opinion of Eleanor A. Lipsmeyer, "a well respected treating" rheumatologist.[7] (*Pltf.'s App. Br.* at 14.) Because Dr. Lipsmeyer saw Plaintiff only once (Tr. 287-288), her opinion may not have been entitled to the weight normally given the opinion of a "treating physician." *See Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (treatment notes from physician who met with claimant three times did not reflect that physician had sufficient knowledge to formulate an opinion as to claimant's ability to function in the workplace).[8] Dr. Lipsmeyer diagnosed fibromyalgia and observed that Plaintiff appeared "very depressed." (Tr. 287-288.) She prescribed Flexeril for Plaintiff at bedtime and suggested that her treating physician consider instituting an anti-depressant if she continued to have difficulty with her fibromyalgia and depression. (Tr. 288.)

---

[7]Plaintiff finds fault with a statement in a fibromyalgia fact sheet which Dr. Leonard provides to his patients who are diagnosed with that condition. (*Pltf.'s App. Br.* at 8, 15.) The one and one-half page summary, entitled "Fibromyalgia," states: "It is a syndrome, or minor ailment, but not a serious disease." (Tr. 293.) The Court views this statement, in context, as an effort by Dr. Leonard to provide reassurance to patients who have recently been diagnosed with fibromyalgia.

[8]*See also* 20 C.F.R. §§ 404.1527(d)(2)(i) and 416.927(d)(2)(i) (2005) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion").

While Plaintiff suggests there are important substantive differences in the medical findings of Drs. Lipsmeyer and Leonard, it appears both physicians diagnosed Plaintiff as suffering from fibromyalgia.  To the extent that there are some conflicts in their opinions, the ALJ was responsible for resolving them. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Vandenboom v. Barnhart*, 412 F.3d 924, 928 (8th Cir. 2005).  It is worth noting that the ALJ specifically mentioned that his final decision did not depend solely on Dr. Leonard's evaluation of Plaintiff, but rather on a "total review of the entire record."  (Tr. 328.)

Third, Plaintiff contends that greater weight should have been given to the opinion of a consultative psychologist, James R. Moneypenny, Ph.D.   (*Pltf.'s App. Br.* at 18-19.) Dr. Moneypenny evaluated Plaintiff on October 7, 1998.  (Tr. 289-290.)  After administering the Wechsler Adult Intelligence Scale-Revised, he found that Plaintiff had a verbal IQ of 98, performance IQ of 95, and full-scale IQ of 97.  (Tr. 289.)  Dr. Moneypenny summarized the conclusions in the narrative portion of his evaluation as follows:

> Laura Cates is a 39 year-old female whose overall intellectual ability falls within the Average category.  No evidence of significant cognitive dysfunction was indicated. Projective testing did not reflect the presence of impaired reality testing.  Objective personality testing revealed the presence of prominent symptoms of depression.  A hysteroid personality pattern was also indicated and this suggests the likelihood that psychological factors play a significant role in the nature and severity of her physical symptoms and complaints.
>
> She is competent to handle her own financial affairs.  The claimant's condition is not expected to change substantially in the next twelve months.

(Tr. 290.)[9]

---

[9]A hysteroid personality pattern is one that resembles or simulates hysteria.  PDR MEDICAL DICTIONARY 868 (2d ed. 2000).  Hysteria is a somatoform (psychoneurotic or psychosomatic) disorder in which there is an alteration or loss of physical functioning that suggests a physical disorder such as paralysis of an arm or disturbance of vision, but that is instead apparently an expression of a psychological conflict or need; a diagnostic term, referable to a wide variety of psychogenic symptoms involving disorder of function, which may be mental, sensory, motor, or visceral. *Id.*

Dr. Moneypenny also completed a Medical Assessment Of Ability To Do Work-Related Activities (Mental).  (Tr. 291-292.)  On this form, he checked boxes indicating that Plaintiff had *no useful ability* to: (1) follow work rules; (2) deal with the public; (3) deal with work stress; (4) maintain attention/concentration; (5) understand, remember, and carry out complex job instructions; (6) understand, remember, and carry out detailed, but not complex, job instructions; (7) behave in an emotionally stable manner; (8) relate predictably in social situations; and (9) demonstrate reliability.  *Id.*  Dr. Moneypenny also evaluated Plaintiff as having *poor ability*[10] to: (1) relate to co-workers; (2) interact with supervisor(s); (3) function independently; and (4) understand, remember, and carry out simple job instructions.  *Id.*  Finally, Dr. Moneypenny found that Plaintiff had fair (limited but satisfactory) ability to use judgment and maintain personal appearance.  *Id.*

Importantly, after checking these boxes, Dr. Moneypenny provided a handwritten explanation of why he was imposing these serious limitations on Plaintiff's ability to function in a full-time, eight hours a day, work environment:

> This lady suffers from depression that for the most part stems from her fibromyalgia symptoms.  Her discomfort and emotional distress substantially interfere with and preclude her from functioning in most routine, 8 hour a day jobs.

(Tr. 291.)  Based on these handwritten notes, Dr. Moneypenny makes it clear that he gave the matter careful consideration before checking the boxes evaluating Plaintiff's ability to function in the work place.

In his decision, the ALJ harshly rejected all of Dr. Moneypenny's findings regarding Plaintiff's mental ability to do work-related activities.  He characterized Dr. Moneypenny's checklist assessment as "absolutely shocking"; of "no probative value;" and "fundamentally flawed due to a lack of logic."  (Tr. 331-332.)  The Court finds the ALJ's use of such language to be troubling; especially since it was the ALJ who ordered that Plaintiff be examined by Dr. Moneypenny.

The closest the ALJ comes to giving a reason for rejecting Dr. Moneypenny's Medical

---

[10]As defined on the form, poor ability means a claimant's ability to function in this area is seriously limited but not precluded.  (Tr. 291.)

Assessment Of Ability To Do Work-Related Activities (Mental) is because it is allegedly inconsistent with the narrative portion of his evaluation of Plaintiff's mental function. After reviewing the narrative portion of Dr. Moneypenny's report, none of these unarticulated inconsistencies are readily apparent to the Court. Furthermore, even if such inconsistencies existed, it would in no way excuse the ALJ's *ad hominem* attack on Dr. Moneypenny.

If the ALJ believed there were inconsistencies between the narrative portion of Dr. Moneypenny's report and the explicit findings set forth in his evaluation of Plaintiff's "Ability To Do Work-Related Activities (Mental)," it was his duty to write Dr. Moneypenny a letter notifying him of the alleged inconsistencies and asking him for an explanation. Instead of discharging this duty, the ALJ chose to engage in sheer speculation by guessing that Dr. Moneypenny must have meant what he wrote in the narrative portion of his report and *not* what he wrote on the section of his report that required him to specifically assess Plaintiff's "Ability To Do Work-Related Activities."

After rejecting Dr. Moneypenny's findings, the ALJ chose to rely on an earlier psychological evaluation of Plaintiff performed by Judy White Johnson, Ph.D.[11] (Tr. 274-278.) In her evaluation, which was performed on July 6, 1998, Dr. Johnson diagnosed Plaintiff as suffering from dysthymia and factitious disorder, with predominately physical signs and symptoms. (Tr. 277.) Importantly, Dr. Johnson did *not* perform a Medical Assessment Of Ability To Do Work-Related Activities (Mental). Thus, Dr. Johnson's evaluation did not directly contradict any of the so-called "absolutely shocking" findings contained in Dr. Moneypenny's Medical Assessment Of Ability To Do Work-Related Activities (Mental).

Finally, to further "support" his conclusion that Plaintiff was not disabled, the ALJ observed "that she [Plaintiff] has always been able to work with 'mental problems.'" (Tr. 332.) Apparently, the ALJ chose to make this unfair and gratuitous observation because, after Plaintiff filed her original

---

[11]Plaintiff's attorney objected to Dr. Johnson's report. The ALJ overruled the objection but, "as a result," directed that Plaintiff have a second psychological evaluation, which was performed by Dr. Moneypenny. (Tr. 331.)

application for benefits over eleven years ago, she engaged in some part-time work for four or less hours a day, a few days a week. (Tr. 415-421.) The Eighth Circuit has repeatedly held that a claimant's ability to perform part-time work does *not* mean that a claimant is capable of performing a full time, forty-hour-a-week job. *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001) (part-time work "does not equate with a finding that a claimant can work on a daily basis in the sometimes competitive and stressful environment of the working world") (internal citations omitted); *Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000) (noting agency policy pursuant to SSR 96-8p that RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis"). Since her claim for benefits has now been pending for eleven years, it should have come as no surprise to the ALJ that Plaintiff might have performed some part-time work in order to survive. Such activity, however, cannot be used by the ALJ to suggest that Plaintiff is now capable of performing full-time work because, over the years, she "has always been able to work [*part time*] with 'mental problems.'"

If Dr. Moneypenny's findings in the Medical Assessment Of Ability To Do Work-Related Activities are accurate, it is probable that Plaintiff is disabled. For the ALJ to credibly reject all of those findings, he was required to explain his reasons for doing so. Given the present state of the record, the Court simply cannot conclude that substantial evidence supports the ALJ's evaluation of Plaintiff's nonexertional mental limitations or his determination of her RFC.

Fourth, Plaintiff argues that the hypothetical questions to the vocational expert failed to include all of her limitations. (*Pltf.'s App. Br.* at 22-27.) Because the Court has determined that substantial evidence does not support the ALJ's evaluation of Plaintiff's mental limitations or her RFC, it need not address this argument.

Finally, Plaintiff contends that the ALJ failed to fully consider the issue of her limitations regarding exposure to paper products and dust which one of her treating physicians, Dr. Harold Hedges, indicated she should avoid. (*Pltf.'s App. Br.* at 27.) According to Dr. Hedges, Plaintiff was tested for and determined to have an allergy to dust. He expressed the opinion that: "Dust associated

with office papers and books as well as chemicals from office machines continue to cause symptoms. The only treatment for these is avoidance." (Tr. 286.) The ALJ's decision that Plaintiff could return to her past relevant work as a laboratory clerk, mail room clerk, or clerk typist fails to account for her allergy to "dust associated with office paper and books."

Thus, the Court recommends that the decision of the Commissioner be reversed and remanded. On remand, the ALJ should have Dr. Moneypenny perform an updated evaluation of Plaintiff's mental functioning, which includes an Assessment of Ability To Do Work-Related Activities (Mental). The ALJ should follow-up with Dr. Moneypenny, in writing, if he believes there are inconsistencies or other problems with any portion of his evaluation of Plaintiff's mental functioning. In determining Plaintiff's RFC, the ALJ also should carefully consider all of Plaintiff's non-exertional impairments supported by the medical evidence, including those mentioned by Dr. Harold Hedges, and Plaintiff's other treating physicians.

The Commissioner has allowed over ten years to elapse without producing a reliable decision on whether Plaintiff is or is not disabled. If this case is remanded, the Court urges the Commissioner to expedite the administrative proceedings in this matter.

IT IS THEREFORE RECOMMENDED that the final decision of the Commissioner be reversed and remanded for action consistent with this opinion. This recommended remand would be a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 6th day of February, 2008.

_____
UNITED STATES MAGISTRATE JUDGE